IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 24, 2024 at Knoxville

**STATE OF TENNESSEE v. LEROY MORENO**

**Appeal from the Circuit Court for Fayette County**
**No. 21-CR-124    J. Weber McCraw, Judge**

———————————

**No. W2023-00316-CCA-R3-CD**

———————————

The Fayette County Circuit Court sentenced the Defendant, Leroy Moreno, as a Range I offender to nine years at thirty percent in the Tennessee Department of Correction following his guilty-pleaded conviction for possession of cocaine with intent to deliver between one-half gram and twenty-six grams. On appeal, the Defendant argues that the trial court abused its discretion by sentencing the Defendant above the minimum sentence in his range and by denying him probation. Regarding the length of his sentence, the Defendant specifically contends that the trial court had no basis to deviate from the minimum sentence due to the Defendant's minimal criminal history and the enhancement and mitigating factors' offsetting each other. He further argues that the trial court erred by failing to consider the statistical information provided by the Administrative Office of the Courts ("AOC") regarding sentencing practices for similar offenses in Tennessee. Relative to the trial court's denial of probation, the Defendant argues that the trial court erred by denying probation when he accepted responsibility for his conduct and had no previous probation violations. Additionally, he contends that the trial court erred by denying probation because basing its denial on the need for deterrence and the seriousness of the offense was not supported by the record. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TOM GREENHOLTZ, JJ., joined.

Kari I. Weber, Assistant District Public Defender (on appeal), Somerville, Tennessee, and Patrick E. Stegall (at guilty plea and sentencing hearings), Memphis, Tennessee, for the appellant, Leroy Moreno.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Mark Edward Davidson, District Attorney General; and Falen Marie Chandler, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.   FACTUAL AND PROCEDURAL HISTORY

A Fayette County grand jury indicted the Defendant for possession with intent to deliver cocaine in an amount more than one-half gram, specifically 57.19 grams, and for possession of a firearm during the commission of a dangerous felony. On March 21, 2022, the Defendant pleaded guilty to the amended count of possession of cocaine with intent to deliver between one-half gram and twenty-six grams, a Class B felony. *See* Tenn. Code Ann. § 39-17-417(a)(4), (c)(1). As part of his agreement with the State, the Defendant's firearm charge was dismissed.

At the guilty plea hearing, the State indicated that had the case proceeded to trial, the proof would have shown the following: On March 16, 2021, Special Agent Andre Nash of the West Tennessee Drug Task Force was working traffic enforcement on Interstate 40 ("I-40") eastbound in Fayette County, Tennessee. While on patrol, Special Agent Nash conducted a traffic stop of a black 2019 Chevy Impala with extremely dark tinted windows. The driver, the Defendant's mother, was unable to locate her driver's license. The driver informed Special Agent Nash that she had driven her mother to Texas for a funeral. Special Agent Nash then spoke with the Defendant who was the passenger. The Defendant stated that he and the driver were returning to Ohio from Texas. He stated they had taken his grandmother to Texas because she was on crutches and he wanted her to be comfortable. Special Agent Nash observed the Defendant sweating profusely from his head.

While running various background checks, Special Agent Nash obtained verbal and written consent from the driver to search the vehicle. During the search, Special Agent Nash located under the Defendant's seat a Springfield Armory pistol with nine live rounds and a duffle bag with men's clothing that contained a clear plastic bag with a white powdery substance. The Defendant told Special Agent Nash that the white substance was creatine. Special Agent Nash also located a Pringles chip can with "a false bottom" that contained two plastic storage bags filled with an off-white "powdery rock-shaped" substance. Special Agent Nash then located a Dr. Pepper can with "a false top" containing fourteen pill capsules filled with a white powder. Special Agent Nash field-tested the white powdery substance from the Pringles can, and it tested positive as cocaine. The white powder inside

- 2 -

the capsules also tested positive as cocaine. The Tennessee Bureau of Investigation later confirmed the identity of the substances as cocaine. The combined substances weighed approximately fifty-seven grams.

Trial counsel stipulated to the factual basis, and the trial court accepted the Defendant's guilty plea. The Defendant affirmed his understanding that he would be sentenced as a Range I offender and that his manner and method of service would be left to the discretion of the trial court.

The sentencing hearing was held on April 12, 2022. The State entered the presence report as an exhibit. Special Agent Nash testified that he had been employed with the West Tennessee Drug Task Force for six years. During this time, he had received specialized training for drug interdiction, including a forty-hour interdiction class, three to six weeks of "ride-alongs" with another agent, and continued yearly trainings. He explained that interdiction agents are trained in finding compartments and detecting "body language, deception." He stated that drug trafficking on I-40 was "very common" and that out of the approximate four to five hundred cars he stops per month, a "large number" resulted in finding illegal narcotics. He affirmed that there has been an increase in drug trafficking along I-40 and that he had prior experience with the method of concealment the Defendant used in this case.

He further explained that when a smaller amount of drugs is found, such as in the instant case, the drugs are often a sample going to the distributor. He stated that the presence of a criminal history was just one indicator of drug smuggling and that it was a trend that drug smugglers had no criminal history. A photograph of the evidence seized was entered as an exhibit.

The Defendant testified that the drugs found in the vehicle were his but that he had believed the white-powdery substance in his duffle bag was creatine. He denied trafficking the drugs but agreed that he possessed "quite a bit" of cocaine. He said that he had concealed the drugs because they were illegal. He acknowledged obtaining the drugs in Texas and that he was taking them to Ohio. When asked what his plans were for the drugs once in Ohio, he stated he had no plans for them other than "personal use[,] probably."

The Defendant stated that he owned a landscape business and had two daughters of whom he did not have custody. Relative to his criminal history, the Defendant stated that he had an assault conviction from 2009 and a possession of marijuana conviction from eight or nine years ago, but he denied that the marijuana had been his. He affirmed that he had been on probation previously and stated that he could comply with its terms and

- 3 -

conditions if granted again. He stated that his previous probations had always been unsupervised and that he had never incurred a violation.

When questioned about an outstanding warrant reflected in the presentence report, he explained that he had recently missed a child support review date in Mansfield, Ohio, and the court there had issued a bench warrant. The Defendant stated he had already submitted to the warrant and paid the fine. The Defendant explained that he had missed that court date in Ohio because he feared missing a court date in Tennessee for the instant case. He acknowledged that he was behind on child support payments but stated that the court date was only a progress review and not for non-payment.

At the conclusion of the hearing, the trial court stated that in determining the appropriate sentence for this offense, it had considered the evidence presented, the presentence report, including the "statistical information . . . provided in the pre[]sentence report[,]" the principles of sentencings, the nature and characteristics of the criminal conduct, the arguments made for sentencing alternatives, the statement the Defendant made on his own behalf, evidence offered by the parties on enhancing and mitigating factors, and the Defendant's potential for rehabilitation. The trial court determined that the Defendant was a Range I offender. The trial court found that enhancement factor (1) applied because the Defendant had a previous history of criminal convictions or behavior in addition to those necessary to establish the appropriate range. *See* Tenn. Code Ann. § 40-35-114(1). It further found that mitigating factor (1) applied due to the Defendant's criminal conduct neither causing nor threatening serious bodily injury. *See id*. at § 40-35-113(1).

In deciding whether to grant an alternative sentence, the trial court stated it had considered the presentence report, the Defendant's physical and mental condition, the Defendant's social history, and the Defendant's testimony. It determined that the Defendant appeared fit and capable. The trial court considered the facts and circumstances of the offense and noted the large amount of narcotics the Defendant was transporting. It stated that the narcotics were concealed, showing this was planned conduct. It found that the Defendant had a previous criminal history and that his previous actions and character were not to his advantage. The trial court noted that while the Defendant's child support issues were not criminal, they demonstrated the Defendant's character; the court noted that the Defendant had acknowledged he was behind on "taking care of his family."

When considering the Defendant's potential for rehabilitation, the trial court stated that the Defendant's bench warrant was "not a great factor" in its consideration. It further stated that although the Defendant had complied with past probationary sentences, he was only on probation because he had engaged in criminal conduct. The trial court thus found

that measures less restrictive than confinement had been unsuccessful. *See id*. at § 40-35-103(1)(C).

The trial court considered the interest of society in being protected from possible future criminal conduct by the Defendant. It expressed concern over the Defendant's "flippant" nature regarding his conduct, noting that this was a "very deliberate" attempt to transport narcotics through the state. The trial court found the Defendant's statement that he had no plans for the narcotics not to be credible. The trial court placed "great interest and inference" on whether full probation would unduly depreciate the seriousness of the offense and if confinement was suited to provide an effective deterrence to others likely to commit similar offenses. *See* Tenn. Code Ann. § 40-35-103(1)(B). Relying on Special Agent Nash's testimony, who had particular knowledge of drug trafficking in this jurisdiction along I-40, the trial court placed "great emphasis" on the concern of public safety. It then found that the Defendant had employment and the ability to earn income. The trial court sentenced the Defendant to nine years at thirty percent, denied his request for an alternative sentence, and ordered a $10,000 fine plus court costs.

The Defendant appeals, challenging the trial court's sentencing decision.

## II.    ANALYSIS

### A.    Standard of Review

When an accused challenges the length of a sentence or manner of service, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the *Bise* standard to "questions related to probation or any other alternative sentence"). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001).

This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-

102(1), a punishment sufficient "to prevent crime and promote respect for the law," Tennessee Code Annotated section 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," Tennessee Code Annotated section 40-35-103(5). *See id.* at 344. Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

The Sentencing Reform Act was enacted in order "to promote justice" and "assure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentencing and providing a fair sense of predictability of the criminal law and its sanctions." Tenn. Code Ann. § 40-35-102. In determining the proper sentence, the trial court must consider: (1) the evidence adduced at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (6) any statistical information provided by the AOC as to Tennessee sentencing practices for similar offenses; (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *Id*. at § 40-35-210(b).

To facilitate meaningful appellate review, the trial court must state on the record the sentencing principles it considered and the reasons for the sentence imposed. Tenn. Code Ann. § 40-35-210(e)(1)(B); *Bise*, 380 S.W.3d at 705. Mere inadequacy in the articulation of the reasons, however, should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. A sentence should be upheld if the trial court provided "enough to satisfy the appellate court that [it] has considered the parties' arguments and [that it] has a reasoned basis for exercising [its] . . . legal decision making." *Id*. (quoting *Rita v. United States*, 551 U.S. 338, 356-57 (2007)).

B.     Length of Sentence

The Defendant contends that the trial court abused its discretion by imposing a nine-year sentence as opposed to the minimum eight-year sentence. He argues that the trial court's decision lacked basis, as he had a minimal criminal history, and because the trial court's finding of one enhancement factor and one mitigating factor, essentially, offset each other. He further argues that the trial court erred by failing to consider the AOC's statistical

information regarding sentencing practices for similar offenses in Tennessee. The State contends that the trial court did not err by imposing a sentence within the applicable range and that the trial court's failure to consider the statistical information does not overcome the presumption of reasonableness afforded to its sentencing determination. We agree with the State.

The weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion so long as its use complies with the purposes and principles of the 1989 Sentencing Act and the court's findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210(d)-(f); *Carter*, 254 S.W.3d at 342-43. Moreover, misapplication of an enhancement or mitigating factor no longer "invalidate[s] the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. Accordingly, this court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.

Here, the Defendant argues that the trial court erred by imposing a nine-year sentence, one year above the minimum in the range. Tenn. Code Ann. §§ 39-17-417(a)(4), (c)(1); 40-35-112(a)(2). He contends that the trial court had no basis to deviate from the minimum sentence because of his minimal criminal history and because the applicable enhancement and mitigating factors should have offset each other. However, defendants are not entitled to the minimum sentence in a range as trial courts have the discretion "to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Carter*, 254 S.W.3d at 343 (quoting Tenn. Code Ann. § 40-35-210(d)). While the Defendant contends that his "minimal" criminal history consisting of an assault, possession of marijuana, and failure to appear supported imposing the eight-year minimum sentence in his range, even a limited criminal history may be used to enhance a sentence. *See* Tenn. Code Ann. § 40-35-114(1); *State v. Warren*, No. M2001-02139-CCA-R3-CD, 2003 WL 354505, at *4 (Tenn. Crim. App. Feb. 14, 2003) (holding that the defendant's three prior misdemeanor convictions were sufficient to enhance his sentence). As to the Defendant's contention that the trial court found only one enhancement factor and one mitigating factor, the presence of one does not necessarily offset the other. The trial court has the discretion to determine the weight given to each, and "mere disagreement" with its weighing of principles and factors is not a basis for an appeal. Tenn. Code Ann. § 40-35-210(d)-(f); *Bise*, 380 S.W.3d at 706, 709; *Carter*, 254 S.W.3d at 342-43.

The Defendant further contends that the trial court erred by failing to consider the AOC's statistical information in its sentencing decision. The State concedes that the trial court failed to consider the AOC's statistical information, but we are not bound by this concession. *See, e.g., State v. Ely*, 48 S.W.3d 710, 716 n.3 (Tenn. 2001). The record reflects that the trial court said it had considered the "statistical information . . . provided in the pre[]sentence report[.]" While the presentence report does not contain any information pertaining to the AOC's report on sentencing practices in Tennessee, we are unclear as to what other statistical information the trial court could have been referring to in making this reference. It is quite possible that the trial court simply misspoke by stating that the statistical information was located in the presentence report. A defense objection, or at least a request for clarification, would have been helpful at this point to give the trial court an opportunity to explain precisely what it was relying on when imposing the Defendant's sentence. As the record stands, however, and given the trial court's statement that it had considered "statistical information," we cannot say that this record clearly demonstrates that the trial court failed to consider the AOC's statistical information. The Defendant is not entitled to relief.

## C. Alternative Sentence

The Defendant next argues that the trial court abused its discretion by denying him probation. Specifically, he argues that the trial court erred because he accepted responsibility for his conduct and had no previous probation violations. He further argues that the trial court erred by basing its denial of probation on deterrence and the seriousness of the offense when the record was devoid of the requisite proof to support this reasoning. The State argues that the trial court did not err as the record supported its decision and because the heightened standard for denial of probation based solely on deterrence or solely on the seriousness of the offense did not apply. We agree with the State.

Tennessee Code Annotated section 40-35-102(5) states that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration." A trial court should consider the following when determining a defendant's suitability for alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1). A defendant is not entitled to any presumption of being a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347.

At the time of the offense in question, a defendant who received a sentence of ten years or less, except for certain specified offenses, was eligible to serve his sentence on probation. Tenn. Code Ann. § 40-35-303(a), (c)(1) (Supp. 2020). While the trial court is required to automatically consider probation as a sentencing option, *see* Tennessee Code Annotated section 40-35-303(b), no criminal defendant is automatically entitled to probation as a matter of law, *see State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). "[T]he burden of establishing suitability for probation rests with the defendant[,]" including the defendant's showing that probation will serve the ends of justice and the best interests of the public and the defendant. *Carter*, 254 S.W.3d at 347 (quoting Tenn. Code Ann. § 40-35-303(b) and *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). Additionally, among the factors applicable to the probation consideration are: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017). In assessing a defendant's potential for rehabilitation, candor is a relevant factor, and "the lack of candor militates against the grant of probation." *State v. Souder*, 105 S.W.3d 602, 608 (Tenn. Crim. App. 2002); *see State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983).

A trial court may sentence a defendant to a term of incarceration based solely on a need for deterrence "when the record contains evidence which would enable a reasonable person to conclude that (1) deterrence is needed in the community, jurisdiction, or state; and (2) the defendant's incarceration may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes." *State v. Hooper,* 29 S.W.3d 1, 13 (Tenn. 2000). When denying an alternative sentence based on the seriousness of the offense "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006) (citations omitted). Further, when the

seriousness of the offense itself is the sole reason for denying probation, "the circumstances of the offense as particularly committed in the case under consideration must demonstrate that the defendant committed the offense in some manner more egregious than is contemplated simply by the elements of the offense." *Trent*, 533 S.W.3d at 292-93. However, these "heightened" standards of review in *Hooper* and *Trotter* are inapplicable when the trial court does not base confinement solely on deterrence or solely on the seriousness of the offense. *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (citations omitted).

In the instant case, the Defendant was eligible to serve his nine-year sentence on probation. *See* Tenn. Code Ann. § 40-35-303(a), (c)(1) (Supp. 2020). However, possession of cocaine with intent to deliver between one-half gram and twenty-six grams is a Class B felony, meaning the Defendant did not qualify to be considered a favorable candidate for probation. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-102(6)). The trial court found that previous rehabilitative efforts, though successfully completed at the time, had failed to prevent or deter new criminal conduct. *See State v. Vanwinkle*, No. M2017-00812-CCA-R3-CD, 2018 WL 2383613, at *6 (Tenn. Crim. App. May 25, 2018). While considering deterrence and the seriousness of the offense, the trial relied on Special Agent Nash's specialized knowledge and testimony regarding drug trafficking along I-40 and placed "great emphasis" on the concern for public safety. The trial court properly found that probation should be denied based upon several different considerations. As such, the trial court was not required to make further specific findings under *Trotter* or *Hooper*. *See Sihapanya*, 516 S.W.3d at 476.

Although the Defendant argues that he accepted responsibility for his conduct and that he had no previous probation violations, the record does not support his amenability to correction. While the Defendant acknowledged that he was concealing and transporting "quite a bit" of cocaine from Texas to Ohio, he denied that he was trafficking the drugs. Moreover, the Defendant continued to deny that he knew the substance in the duffle bag was also cocaine and not creatine. Further, the trial court noted credibility concerns with the Defendant's saying he had no plans for the large amount of narcotics he was transporting to Ohio, a relevant factor in determining a defendant's potential for rehabilitation. *See Souder*, 105 S.W.3d at 608; *Bunch*, 646 S.W.2d at 160. As such, the trial court did not err by concluding that the Defendant had not met his burden in establishing his suitability for probation. *Carter*, 254 S.W.3d at 347. The Defendant is not entitled to relief.

### III. CONCLUSION

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
KYLE A. HIXSON, JUDGE